# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

SHEILA SNYDER,

      Plaintiff,

v.

WAYNE STATE UNIVERSITY,
a Michigan State University; KIMBERLY
ANDREWS EPSY, President of
Wayne State University; and ERICA
WALLACE, Director of Athletics at
Wayne State University,

      Defendants.

_____/

Case No.
Hon.

PITT MCGEHEE PALMER
BONANNI & RIVERS, P.C.
Robert W. Palmer (P31704)
*Attorney for Plaintiff*
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067-3848
284.398.9800
rpalmer@pittlawpc.com

_____

## COMPLAINT AND JURY DEMAND

NOW COMES Plaintiff, SHEILA SNYDER, by and through her attorneys, PITT, McGEHEE, PALMER, BONANNI & RIVERS, P.C., and files the following Complaint against her former employer and their agents, and in support thereof states as follows:

## JURISDICTION, VENUE AND THE PARTIES

1. This action for monetary damages arises out of Title VII of the Civil Rights Act of 1964, Plaintiff's Right to Sue letter was issued and mailed by the Equal Employment Opportunity Commission ("EEOC") on April 15, 2025. Said EEOC complaint alleged gender discrimination as against Defendant Wayne State University.

2. This action also seeks damages under the Michigan Elliott-Larsen Civil Rights Act against Defendants KIMBERLY ANDREWS EPSY and ERICA WALLACE, specifically MCLA § 37.2201-2202 (gender discrimination).

3. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 to address the claims brought under the Michigan Elliott-Larsen Civil Rights Act. The claims brought under the Michigan Elliott-Larsen Civil Rights Act arise out of the same nucleus of operative fact as the Title VII claim brought against the University.

4. The venue of this controversy is based on 28 U.S.C. § 1391 (d).

5. Plaintiff, SHEILA SNYDER, at all times material hereto, resided in the Township of Macomb, County of Macomb, State of Michigan.

6. Defendant, WAYNE STATE UNIVERSITY ("WSU"), is a Michigan State University with its principal place of business located in the City of Detroit, County of Wayne, State of Michigan, and at all times material hereto, conducted the

2

business of running a state university. Said university also maintains an athletic program for its students.

7. Defendant, KIMBERLY ANDREWS EPSY, at all times material hereto was the President of Wayne State University and was the direct supervisor of Defendant Erica Wallace.

8. Defendant, ERICA WALLACE, at all times material hereto was the Director of Athletics for Wayne State University.

9. Plaintiff has duly filed the Verified Notice of Claim as to Defendant, Wayne State University pursuant to MCL 600.6431(1) on February 20, 2025.

10. The relevant events took place at the central location of Wayne State University located in the City of Detroit, County of Wayne, State of Michigan.

11. The amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees thereon.

## FACTUAL ALLEGATIONS

12. Plaintiff was hired by Defendant WSU in 1989 (Tennis coach), held numerous positions and titles throughout her career and, at the time of her constructive discharge, held the position of Athletic Coach I.

13. At all times material hereto, Plaintiff was employed as the women's tennis coach at WSU, and, as such, had the role and responsibility of coaching

3

and running the women's tennis program, as well as monitoring, counseling, and supporting the women who were on the tennis team.

14. Most of the individuals on the women's tennis team were foreign nationals playing tennis at WSU on scholarship and were away from their home and parents for the vast majority of the school year. Plaintiff's responsibilities included seeing to the tennis players' well-being logistically, physically, and mentally. Plaintiff routinely was required to listen and counsel the various players on the team regarding both tennis and personal issues.

15. During the relevant time period, one of the tennis players, "DG," who was from the country of Georgia, required significant attention and counseling as a result of being away from her home and further as a result of suffering from ongoing issues of depression, lack of focus, and lack of any significant parenting.

16. On February 23, 2024, the WSU tennis team was engaged in a tournament in Kearney, Nebraska.

17. The tournament was an indoor tournament involving the top eight teams in Division II from around the country.

18. Following a first-round defeat, the Plaintiff gathered her team together to discuss the loss, their performance, and to address strategy and attitude for the upcoming matches. The purpose of the meeting was also to promote team cohesiveness and to inspire the team's motivation.

19. The team meeting took place inside the Kearney tennis facility in the afternoon of February 23, 2024.

20. After the conversation had gone on for several minutes, the Plaintiff notice that DG, who suffered from a number of personal issues and with whom the Plaintiff had a good coaching and close friendly relationship, was not paying attention, was disconnected, and was not making eye contact with the coach or any other members of the team as is required in a team meeting.

21. During the day, DG, who was not competing because of an injury, was disengaged and was not supporting the other team member.

22. After continuing to attempt to secure everyone's attention through speaking, the Plaintiff flipped her cell phone across the table toward DG in order to secure her attention. The phone skidded across the table and resulted in incidental contact with DG. At that point, DG attempted to leave the required team meeting, at which point the Plaintiff strongly told her to sit down and pay attention.

23. At that time, DG remained at the meeting and became engaged in listening to the discussion.

24. The tournament continued through the weekend, concluding on Sunday, February 25, 2025.

25. On Monday, February 26, 2024, DG and Plaintiff talked about Friday's event, cleared the air about the incident, and hugged after. In fact, DG thanked the coach for the trip and tournament in the team group chat.

26. On Wednesday, February 28, 2024, the Plaintiff apologized to DG for the event of Friday in front of the entire team, and stated that they both had spoken, had a great conversation, and were moving forward in a positive direction.

27. On February 28, 2024, at approximately 2:30 p.m., the Plaintiff advised her direct supervisor, Defendant Erica Wallace, that she had tossed her phone at DG due to DG's lack of attention and attitude, and had spoken to her sternly, possibly using profanity, to secure her attention. She also advised Ms. Wallace that she had spoken with DG and that they had resolved the issue.

28. At 8:24 p.m. on February 28, 2024, Plaintiff received a call from Defendant Erica Wallace wherein Ms. Wallace advised Plaintiff that she was investigating the incident, and that Plaintiff was not to come onto campus or talk to her team.

29. On Thursday, February 29, 2024, Defendant Erica Wallace advised Plaintiff that she had spoken with the president of WSU and that it was the position of WSU that Plaintiff had violated the University's workplace violence policy and had three options: (1) resign; (2) be fired; or (3) retire. Plaintiff was

also instructed again not to have any further contact with her team and that her answer was needed immediately.

30. Although Plaintiff was a member of a union, at no time was Plaintiff's union representative brought into any discussions concerning the fact that it was the position of WSU that the Plaintiff was going to be fired if she did not resign or retire.

31. On Friday, March 1, 2024, Defendant Wallace texted the Plaintiff in the morning and requested an email from her immediately saying that she was retiring. At approximately 1:54 p.m. on said date, the Plaintiff responded to Ms. Wallace and indicated that this was a lot to process, that she was struggling with the situation, and that she wished to meet in person to discuss and further explain the situation.

32. Upon information and belief, Defendant Wallace did not complete a fair and thorough investigation, including looking at any video recording of the event although one existed.

33. Approximately two hours later, Defendant Wallace called the Plaintiff and said that Plaintiff had no choice, she would not be returning as tennis coach and reiterated that if she did not voluntarily retire or resign, she would be terminated.

7

34. On said date, at approximately the same time, Plaintiff also received a text message from Defendant Wallace indicating that her retirement letter was required that evening.

35. Based on the pressure and the threat of termination, Plaintiff emailed Human Resources and Defendant Wallace at 6:05 p.m. on February 29, 2024, that she would retire effective March 1, 2024. Approximately one hour later, Defendant Wallace sent an email to all members of the athletic staff that Plaintiff would be retiring from the university as head women's tennis coach.

36. Prior to her termination, Plaintiff had never received any type of discipline nor, to her knowledge, had any team member ever complained relative to any improper, inappropriate, or offensive treatment during her 35 years of coaching.

37. In September 2023, following WSU's Concordia football game, the head football coach (a male) physically attempted to assault and batter a team member's parent after that parent criticized his coaching. The football coach had to be physically restrained by other coaches on the team to prevent him from assaulting and battering the student's parent. During the course of the physical restraint, the football coach did, in fact, make unconsented contact with other coaches on the team, which constituted an assault and battery.

38. The event involving WSU's football coach was witnessed by media, players, parents, and other coaches. The situation was described by reporters as total chaos.

39. Upon information and belief, no disciplinary corrective action plan was taken with respect to WSU's head football coach's clear violation of WSU's workplace violence policy. -

40. The events involving the head football coach were known to both Defendants Epsy and Wallace, and they declined to take any type of disciplinary action.

41. Upon information and belief, incidental physical contact and the use of profane language routinely occurs between male coaches and male team members.

42. As noted by the above factual pattern, Defendants WSU, Kimberly Epsy and Erica Wallace treated the Plaintiff, a 35-year employed female coach, in a disproportionate and discriminatory manner.

43. As a direct and proximate result of Defendants' actions, the Plaintiff has suffered severe and significant emotional injuries and damages, losses to her reputation, and significant economic damages and losses.

44. The decision to terminate Plaintiff was made intentionally and without a thorough and complete investigation.

## COUNT I
## VIOLATION OF TITLE VII
## GENDER DISCRIMINATION

45.     Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

46.     At all times material hereto, Plaintiff was an employee of Defendant WSU and Defendant WSU was an employer within a definition of Title VII.

47.     At all times material hereto, Defendant WSU and their upper management including Defendants, Kimberly Espy, and Erica Wallace were under a duty not to discriminate against the Plaintiff as a result of the Plaintiff's gender.

48.     In direct disregard of those duties and obligations Defendant Wayne State University discriminated and retaliated against Plaintiff in failing to thoroughly investigate the facts and circumstances leading to Plaintiff's termination, and in constructively discharging the Plaintiff from her employment after 40 years of unblemished service.

49.     The above acts were taken against the Plaintiff as a direct and proximate result of the fact that Plaintiff was a female and were clearly discriminating as compared to how a similarly situated male was treated.

50. As a direct and proximate result of the wrongful actions complained of herein, Plaintiff suffered all the injuries and damages set forth above.

51. The actions of Defendant WSU by and through its employees, were willful and taken with the intent to deprive the Plaintiff of her Civil Rights as guaranteed and protected to her under Title VII.

52. As a result of the clear and intentional violation of Plaintiff's Civil Rights in addition to compensatory damages Plaintiff seeks an award of actual attorney fees and costs as well as an award of exemplary/punitive damages.

53. WHEREFORE, Plaintiff respectfully requests that this honorable court enter a judgment in her favor awarding the Plaintiff the following relief against Defendant Wayne State University:

    A. Compensatory damages in an amount which would compensate the Plaintiff for her lost income, including wages and benefits, both past and future to which she is found to be entitled;

    B. Compensatory damages for the non-economic losses experienced by the Plaintiff;

    C. Reasonable actual attorney fees, costs and interest wrongfully incurred in obtaining this judgment;

    D. Exemplary and or punitive damages due to the intentional nature of Defendant's misconduct;

11

E. Any other relief this Court deems equitable or just.

### COUNT II
### VIOLATION OF THE ELLIOTT-LARSEN CIVIL RIGHTS ACT
### GENDER DISCRIMINATION
### DEFENDANTS EPSY AND WALLACE

54. Plaintiff incorporates by reference the allegations set forth above as though fully set forth herein.

55. At all times relevant hereto, Defendants, Kimberly Espy, and Erica Wallace were employers as defined by the Elliott-Larsen Civil Rights Act; specifically, MCLA § 37.2013.

56. At all times relative to this action, Defendants, Kimberly Espy, and Erica Wallace were prohibited under the Elliott-Larsen Civil Rights Act from making any employment decision regarding Plaintiff, which was motivated by the Plaintiff's race or gender.

57. In violation of this duty, Defendants intentionally discriminated against Plaintiff in constructively discharging her from her employment after 40 years of unblemished service.

58. As a direct and proximate result of Defendants' gender discrimination, Plaintiff has suffered, and will continue to suffer, economic damages, including lost wages and other compensation of employment, and non-economic losses,

including, but not limited to, severe and significant emotional distress, including depression, humiliation, and anxiety.

59. WHEREFORE, Plaintiff requests the following relief:

A. An order awarding economic and non-economic damages, both past and future, in an amount she is found to be entitled;

B. An order awarding Plaintiff exemplary damages;

C. An order awarding Plaintiff interest, costs, and attorney fees and litigation expenses;

D. An order granting Plaintiff such other relief as this Court deems just and equitable.

Respectfully submitted,

PITT, McGEHEE, PALMER
BONANNI & RIVERS, P.C.

/s/ *Robert W. Palmer*
Robert W. Palmer (P31704)
*Attorney for Plaintiff*
117 W. Fourth Street, Suite 200
Royal Oak, MI 48067
(248) 398-9800
rpalmer@pittlawpc.com

July 3, 2025

13

## **JURY DEMAND**

Plaintiff hereby demands trial by jury in this matter.

                                            Respectfully submitted,

                                            PITT, McGEHEE, PALMER
                                            BONANNI & RIVERS, P.C.

                                            /s/ *Robert W. Palmer*
                                            Robert W. Palmer (P31704)
                                            *Attorney for Plaintiff*
                                            117 W. Fourth Street, Suite 200
                                            Royal Oak, MI 48067
                                            (248) 398-9800
                                            rpalmer@pittlawpc.com

July 3, 2025